UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **GEORGIA DUNN**, <br> 27320 Markbarry Ave. <br> Euclid, OH 44132 <br><br> Plaintiff, <br><br> vs. <br><br> **OCWEN LOAN SERVICING, LLC**, <br> c/o Corporation Service Company <br> 50 West Broad Street, Suite 1330 <br> Columbus, OH 43215 <br><br> Defendant. | CASE NO.: <br><br> JUDGE: <br><br> **COMPLAINT FOR DAMAGES** <br><br> **JURY DEMAND ENDORSED HEREON** |

Plaintiff Georgia Dunn ("Dunn"), through counsel, for her Complaint against Defendant Ocwen Loan Servicing LLC ("Ocwen"), states:

## WHY DUNN IS FILING THIS COMPLAINT

1. This Complaint concerns Ocwen's misapplication of Dunn's monthly mortgage payments stemming from Ocwen's actions in imposing improper and duplicative fees on her mortgage account. Ocwen's actions do not meet the minimal standards of conduct for mortgage servicers and Ocwen has caused Dunn financial damage and emotional distress, and has forced Dunn to incur attorneys' fees in attempt to fix Ocwen's accounting errors, all of which will appear more fully below.

## PARTIES, JURISDICTION, AND VENUE

2. Dunn is the owner of residential real property and improvements located at and commonly known as 27320 Markbarry Ave., Euclid, OH 44132 (the "Home").

1

3. Dunn currently maintains the Home as her primary, principal residence, and has so maintained for all times relevant to the allegations of this Complaint.

4. Ocwen is the current servicer of a note executed by Dunn (the "Note") and a mortgage on the Home that secures the Note (the "Mortgage") (collectively, the "Loan"). The Loan is attached as ***Exhibit 1***.

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA), and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (FDCPA).

6. This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

7. Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Dunn maintains the Home as her primary residence within this District, Ocwen does business within this District, and the actions giving rise to the causes of action in this Complaint, *infra*, occurred primarily within this District.

## INTRODUCTION

8. This action is filed to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) and implemented pursuant to Section 6(f) of RESPA which became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.1, *et seq.* of Regulation X.

9. In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

10. Specifically, on January 17, 2013, the CFPB issued the RESPA Mortgage Servicing Final Rules, 78 F.R. 10695 ("Regulation X") (February 14, 2013), which became effective on January 10, 2014.

11. The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

12. Dunn asserts claims for relief against Ocwen for breaches of the specific rules under Regulation X and the FDCPA as set forth, *infra*.

13. Dunn has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) and the FDCPA pursuant to 15 U.S.C. § 1692k(d) for the claimed breaches and such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

14. Dunn also asserts a common law claim for breach of contract.

## FACTUAL BACKGROUND

15. Dunn purchased the Home as her primary, principal residence on or about December 14, 2000, and financed the purchase through the Loan. *See Exhibit 1*.

16. On November 12, 2002, non-party National City Bank ("National City") initiated foreclosure proceedings against Dunn in the case captioned *National City Bank vs. Georgia M. Dunn, et al.*, in the Court of Common Pleas for Cuyahoga County, Ohio and assigned Case Number CV-02-486098 (the "2002 Foreclosure").

17. On or about October 21, 2004, National City assigned the Mortgage to non-party HSBC Bank USA, N.A., as Trustee for ACE Securities Corp. Home Equity Loan Trust for the registered Holders of ACE Securities Corp. Home Equity Loan Trust, Series 2005-SD1, Asset Backed Pass-Through Certificates ("HSBC").

18. Ocwen services the Loan on behalf of HSBC. Ocwen has serviced the Loan since November 15, 2004, when servicing transferred to it from non-party Altegra Credit Company.

19. On February 9, 2005, the 2002 Foreclosure was dismissed without prejudice.

20. On September 15, 2015, HSBC initiated foreclosure proceedings against Dunn in the case captioned *HSBC Bank USA vs. Georgia M. Dunn, et al.*, in the Court of Common Pleas for Cuyahoga County, Ohio and assigned Case Number CV-15-851153 (the "2015 Foreclosure").

21. According to the Loan's transaction history, between July 8, 2014 and February 2, 2017, Ocwen charged the Loan fees related to the 2015 Foreclosure and property inspection fees. Relevant portions of the Loan's transaction history are attached as **Exhibit 2**.

22. As of February 2, 2017, the Loan's fee balance was $1,787.29. *See Exhibit 2*.

23. On or about April 20, 2017, Dunn and Ocwen entered into a loan modification (the "Modification") wherein Dunn's total monthly payment obligation would be $642.13. The monthly payments included $355.92 for principal and interest and $286.21 for escrow amounts (adjusting periodically). The Modification is attached as **Exhibit 3**.

24. The Modification states:

> The modified Principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new Principal balance of my Note will be $88,420.99 (the "New Principal Balance").

*See Exhibit 3, Section B*.

25. According to the Loan's transaction history, on April 20, 2017, Ocwen added all outstanding fees, including all foreclosure fees, to the Modified Principal Balance. *See Exhibit 2*.

26. As of April 21, 2017, the Loan's fee balance was $0.00. *See Exhibit 2*.

27. Dunn made her modified mortgage payments for the months of May and June 2017 in an amount of $642.13. *See Exhibit 2*.

28. On June 16, 2017, the state court granted HSBC's motion to dismiss the 2015 Foreclosure.

29. Dunn made her modified mortgage payment for July 2017 in an amount of $642.13. *See Exhibit 2*.

30. On July 14, 2017, the state court sent HSBC a bill for fees related to the 2015 Foreclosure, as HSBC had a balance due of $538.75. HSBC paid the balance on August 4, 2017.

31. On or about August 7, 2017, Ocwen improperly charged the Loan $538.75 (the "Foreclosure Fee"), as indicated by Dunn's September 2017 Mortgage Account Statement. Dunn's Monthly Mortgage Account Statements for the months of September 2017 and November 2017 through January 2019 are attached as ***Exhibit 4***.

32. The Foreclosure Fee is improper because Ocwen had already charged all foreclosure fees to the Loan before February 2, 2017, and then added those charges to the Modified Principal Balance on April 20, 2017 according to Section B of the Modification. *See Exhibit 2*.

33. Ocwen did not charge the Loan any new foreclosure fees from February 3, 2017 to August 6, 2017. *See Exhibit 2*.

34. This improper Foreclosure Fee brought the amount due as of September 1, 2017 to $1,192.79. *See Exhibit 4*.

35. The September 2017 Mortgage Account Statement states three times that $1,192.79 is the total amount due. *See Exhibit 4*.

36. On or about May 31, 2017, Ocwen sent an Annual Escrow Account Disclosure Statement wherein Ocwen changed the total monthly payment obligation to $654.04, starting the "next coming escrow year" beginning with the August 2017 payment. The monthly payment included $355.92 for principal and interest and $298.12 for escrow amounts. The May 31, 2017 Annual Escrow Account Disclosure Statement is attached as ***Exhibit 5***.

37. Dunn made her modified mortgage payments of $654.04 for the months of August through December 2017. *See Exhibit 2* and *Exhibit 4*.

38. On or about November 8, 2017, Ocwen sent an Annual Escrow Account Disclosure Statement wherein Ocwen changed the total monthly payment obligation to $633.27, starting the "next coming escrow year" beginning with the January 2018 payment. The monthly payment included $355.92 for principal and interest and $277.35 for escrow amounts. The November 8, 2017 Annual Escrow Account Disclosure Statement is attached as ***Exhibit 6***.

39. Dunn made her modified mortgage payment in the amount of $654.04, although the November 8, 2017 Annual Escrow Account Disclosure Statement changed her monthly escrow amounts. *See Exhibit 4*.

40. Starting in January 2018, in order to recover the improperly charged Foreclosure Fee, Ocwen began taking the difference between the $633.27 amount due and and Dunn's actual monthly mortgage payment of $654.04. *See Exhibit 4*.

6

41. As indicated by Dunn's February 2018 Mortgage Account Statement, on or about January 11, 2018, Ocwen misapplied a portion of Dunn's January 2018 payment to credit the Loan $20.77 for the Foreclosure Fee. *See Exhibit 4*.

42. On or about November 14, 2017, Ocwen sent an Annual Escrow Account Disclosure Statement wherein Ocwen changed the total monthly payment obligation to $631.59, starting the "next coming escrow year" beginning with the February 2018 payment. The monthly payment included $355.92 for principal and interest and $275.67 for escrow amounts. The November 14, 2017 Annual Escrow Account Disclosure Statement is attached as **Exhibit 7**.

43. Starting in February 2018, in order to recover the improperly charged Foreclosure Fee, Ocwen began taking the difference between the $631.59 amount due and Dunn's actual monthly mortgage payment of $654.04. *See Exhibit 4*.

44. For the months of February 2018 through May 2018, Ocwen misapplied a portion of Dunn's monthly payments to credit the Loan $20.77 monthly for Foreclosure Fee, for a total of $89.80. *See Exhibit 4*.

45. On or about April 23, 2018, Ocwen sent an Annual Escrow Account Disclosure Statement wherein Ocwen changed the total monthly payment obligation to $641.87, starting the "next coming escrow year" beginning with the June 2018 payment. The monthly payment included $355.92 for principal and interest and $285.95 for escrow amounts. The April 23, 2018 Annual Escrow Account Disclosure Statement is attached as **Exhibit 8**.

46. For the months of June 2018 through December 2018, Dunn continued to send her modified mortgage payments in the amount of $654.04, although the April 2018 Annual Escrow Account Disclosure Statements changed her monthly escrow amounts. *See Exhibit 4*.

47. Starting in June 2018, in order to recover the improperly charged Foreclosure Fee, Ocwen began taking the difference between the $641.87 amount due and Dunn's actual monthly mortgage payment of $654.04. *See Exhibit 4*.

48. For the months of June 2018 through December 2018, Ocwen misapplied a portion of Dunn's monthly payments to credit the Loan $12.17 monthly for the Foreclosure Fee, for a total of $85.19. *See Exhibit 4*.

49. In total, Ocwen has misapplied $195.76 of Dunn's monthly payments since January 2018 to pay the wrongfully imposed Foreclosure Fee that Ocwen previously added to the Loan's Modified Principal Balance. *See Exhibit 4*.

**DUNN RETAINS COUNSEL AND TRIES TO HAVE OCWEN CORRECT ERRORS**

50. Upon discovering the improper Foreclosure Fee in August of 2017, Dunn hired Dann Law to investigate potential errors relating to Ocwen's servicing of the Loan.

51. On or about September 6, 2017, Dunn, through counsel, sent correspondence to Ocwen consisting of or otherwise comprising a request for information pursuant to 12 C.F.R. § 1024.36 requesting detailed information related to the Loan (the "RFI"). The RFI is attached as ***Exhibit 9***.

52. On or about October 9, 2017, Ocwen provided correspondence in response to the RFI (the "Response to the RFI"). The Response to the RFI is attached as ***Exhibit 10***.

53. In the Response to the RFI, Ocwen promised that it would mail a payment reconciliation history to Dunn, however the payment reconciliation history received was wholly illegible and delayed Dunn's investigation into Ocwen's accounting. Further, Ocwen refused to provide servicing notes, stating that they were for "internal purpose only". *See Exhibit 10*.

54. On or about November 6, 2018, Dunn, through counsel, sent correspondence to Ocwen consisting of or otherwise comprising a notice of error pursuant to, *inter alia*, 12 C.F.R. §§ 1024.35(b)(2) and 1024.35(5) (the "NOE"), asserting that Ocwen imposed improper fees on the Loan by charging the Foreclosure Fee and failed to properly apply accepted payments under the terms of the Modification. The NOE is attached as ***Exhibit 11.***

55. Additionally, the NOE informed Ocwen that it failed to send a legible copy of the Loan's transaction history and redacted servicing notes removing any confidential information. *See Exhibit 11*.

56. Ocwen received the NOE on November 10, 2018 at its designated address for such. USPS tracking information for the NOE is attached as ***Exhibit 12***.

57. On or about December 17, 2018, Ocwen sent correspondence in response to the NOE (the "Response to the NOE"). The Response to the NOE is attached as ***Exhibit 13***.

58. In the Response to the NOE, Ocwen provides non-responsive, vague, conclusory, and contradictory information relating to the Foreclosure Fee:

　　(a) Ocwen vaguely explains what a "Foreclosure Cost" but fails to explain the specific nature of the Foreclosure Fee charged to the Loan;

　　(b) Ocwen asserts in a conclusory fashion that the Foreclosure Fee charged to the Loan is "valid"; and,

　　(c) Ocwen states, in contradiction to every Mortgage Account Statement received by Dunn since August 2017, that "[t]he outstanding expense is not immediately due and it may be paid anytime during the account term or at the time of payoff."

*See Exhibit 13*.

## THE DAMAGE TO DUNN

59. Ocwen failed to properly service the Loan which has directly and proximately caused the following damages to Dunn:

(a) Ocwen misapplied $195.76 of Dunn's monthly payments to pay for the improper Foreclosure Fee;

(b) Dunn incurred attorneys' fees and postage costs in the preparation and mailing of requests for information and the notice of error;

(c) Ocwen's conduct has caused Dunn to suffer great emotional distress driven by the fear of Ocwen demanding a higher monthly payment than the Modification provides for and misapplying her payments, which has resulted in loss of sleep, anxiety, depression, and other significant emotional distress.

**PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY OCWEN**

60. Ocwen's actions are part of a pattern and practice of behavior in violation of Dunn's rights and in abdication and contravention of Ocwen's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

61. At the time of the filing of this Complaint, Ocwen has had more than Eleven Thousand Seventy-Five (11,075) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to mortgages.

62. At the time of the filing of this Complaint, Ocwen has had more than Nine Thousand Six Hundred Fifty-Two (9,652) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "Loan servicing, payments, escrow account" related to mortgages.

63. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (http://www.consumerfinance.gov/complaintdatabase/).

64. Dunn has reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by Ocwen against other borrowers. In particular, Dunn has reviewed the fifteen (15) consumer complaints attached hereto and identified as ***Group Exhibit 14***. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints evidence conduct which demonstrates that Ocwen has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

## COUNT ONE: VIOLATION OF 12 C.F.R. § 1024.35(e)
**(Failure to perform a reasonable investigation and correct asserted errors)**

65. Dunn restates and incorporates all of her statements and allegations contained in paragraphs 1 through 64, in their entirety, as if fully rewritten herein.

66. 12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

67. Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

68. 12 C.F.R. § 1024.35(d) provides that a servicer must acknowledge in writing receiving a notice of error from a borrower within five (5) days of receipt.

69. 12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

 (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

 (B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

70. The NOE meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). *See Exhibit 11*.

71. The NOE provided clear instructions to Ocwen as to how it should respond and the consequences if it failed to respond. *See Exhibit 11*.

72. The NOE was sent to Ocwen at the address designated by Ocwen for receipt of notices of error, which is:

> Ocwen Loan Servicing, LLC
> Research
> P.O. Box 24736
> West Palm Beach, FL 33416-4736

*See Exhibit 4* and *Exhibit 11*.

73. Through the NOE, Dunn asserted that Ocwen improperly charged the Loan $538.75 and wrongfully demanded $1,192.79 for the September 2017 payment. *See Exhibit 10*.

74. Ocwen received the NOE on November 10, 2018 at the designated address. *See Exhibit 12*.

75. Ocwen did not correct any errors and specifically stated that it believes that no error had occurred, therefore choosing to respond to the NOE pursuant to the requirements of 12 C.F.R. § 1024.35(e)(1)(i)(B). *See Exhibit 13*.

76. It is clear that Ocwen did not perform a reasonable investigation into the errors asserted by the NOE. Ocwen provided conflicting, non-responsive, and vague statements concerning the improper Foreclosure Fee. *See supra*, at ¶ 58.

77. Had Ocwen performed a reasonable investigation into the asserted errors, it would have discovered not only that it improperly charged the Loan the Foreclosure Fee, but also that Ocwen previously added all foreclosure fees to the Modified Principal Balance.

78. To this date, Ocwen has failed to correct or perform a reasonable investigation into the errors asserted through the NOE.

79. Dunn suffered actual damages, as plead, *supra*, at ¶ 59, that were caused by Ocwen's actions.

80. Ocwen's conduct in failing to reasonably investigate the errors asserted by the NOE constitutes a clear, separate, and distinct violation of 12 C.F.R. § 1024.35(e).

81. Ocwen's actions are part of a pattern and practice of behavior in conscious disregard for Dunn's rights.

82. As a result of Ocwen's actions, Ocwen is liable to Dunn for actual damages, statutory damages, costs, and attorneys' fees pursuant to 12 U.S.C. § 2605(f).

**COUNT TWO: BREACH OF CONTRACT**

83. Dunn restates and incorporates all of her statements and allegations contained in paragraphs 1 through 65, in their entirety, as if fully rewritten herein.

84. The Loan, as modified pursuant to the Modification, is an enforceable contract between Dunn, Ocwen, and HSBC. *See Exhibit 1* and *Exhibit 3*.

85. Ocwen breached the Loan by failing to honor its terms, specifically by failing to apply payments made by Dunn in accordance with the terms of the Modification and instead taking a portion of Dunn's monthly payments to pay the improperly charged Foreclosure Fee.

86. Since the Modification became effective, Dunn fully performed her obligations pursuant to the Loan by making every payment of amounts properly due and by otherwise meeting every obligation imposed by the Loan.

87. Ocwen's breach is one of bad faith as demonstrated by Ocwen improperly adding $538.75 to Dunn's past due amount in violation of Section B of the Modification and charging Dunn even though Ocwen previously added all foreclosure fees to the Modified Principal Balance.

88. Ocwen owed Dunn an implied duty of good faith to handle the Modification and the payments made by Dunn properly and in accordance with the parties' agreement. Ocwen breached its duty to Dunn by failing to apply payments made by Dunn in accordance with the terms of the Modification.

89. Dunn suffered actual damages, as plead, *supra*, at ¶ 59, that were caused by Ocwen's actions.

90. As a result of Ocwen's actions, Ocwen is liable to Dunn for actual damages.

**COUNT THREE: VIOLATION OF THE FDCPA, 15 U.S.C. §§ 1692, *et seq.***

91. Dunn restates and incorporates all of her statements and allegations contained in paragraphs 1 through 65, in their entirety, as if fully rewritten herein.

14

92. Dunn is a "consumer" as she is a natural person and resident of Cuyahoga County, Ohio obligated or allegedly obligated to pay the Loan. 15 U.S.C. § 1692a(3).

93. The Loan is a "debt" as Dunn purchased the Home as her primary, principal residence and financed the purchase through the Loan. *See Exhibit 1*.

94. Ocwen is a "debt collector" because it regularly collects or attempts to collect on the Loan for HSBC. 15 U.S.C. § 1692a(6).

95. The Loan was in default at the time Ocwen began to collect the debt as the 2002 Foreclosure was still pending when Ocwen began servicing the Loan.

96. The acts of Ocwen in collecting and attempting to collect the improper Foreclosure Fee constitute violations of 15 U.S.C. § 1692f generally, engaging in any unfair or unconscionable means to collect or attempt to collect any debt, and 15 U.S.C. § 1692f(1) specifically, the collection of any amount that is not expressly permitted by the Modification or law.

97. The false representations of Ocwen in the Response to the NOE that the improper Foreclosure Fee was a valid fee and of the amount due on the monthly mortgage statements constitutes a violation of 15 U.S.C. § 1692e generally, making any false, deceptive, or misleading representation or means in connection with the debt collection, and 15 U.S.C. § 1692e(2)(A) specifically, misrepresenting the character, amount, or legal status of any debt.

98. As a consequence of Ocwen's actions, in attempting to collect the improper Foreclosure Fee when it knew that such fee was prohibited by the Modification and falsely representing the status of the Foreclosure Fee, Dunn suffered actual damages, as plead, *supra*, at ¶ 59, that were caused by Ocwen's actions.

99. As a result of Ocwen's actions, Ocwen is liable to Dunn for actual damages, statutory damages, costs, and attorneys' fees pursuant to 15 U.S.C. § 1692k(a).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Georgia Dunn prays that this Court enter its order granting judgment against Defendant Ocwen Loan Servicing, LLC, for the following:

A. Actual damages in an amount to be determined at trial for the allegations contained in all Counts;
B. Statutory damages of Two Thousand Dollars ($2,000.00) per violation contained in Count One;
C. Statutory damages of One Thousand Dollars ($1,000.00) for the allegations contained in Count Three;
D. Costs and reasonable attorneys' fees as to Counts One and Three; and,
E. Such other relief which this Court may deem appropriate.

Respectfully submitted:

/s/ Michael A. Smith, Jr.
Michael A. Smith, Jr. (0097147)
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Phone: (216) 373-0539
Facsimile: (216) 373-0536
notices@dannlaw.com
*Counsel for Plaintiff Georgia Dunn*

## JURY DEMAND

Dunn hereby requests a trial by jury on all issues, with the maximum number of jurors permitted by law.

/s/ Michael A. Smith, Jr.
Michael A. Smith, Jr. (0097147)
Dann Law
*Counsel for Plaintiff Georgia Dunn*
